**Seldon Dodge and Gladys Dodge v. Town of Worcester, Worcester Town School District, Town of Calais, Calais Town School District, University of Vermont and State of Vermont**

[282 A.2d 799]

No. 110-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 5, 1971

*John A. Burgess*, Montpelier, for Plaintiffs.

*James M. Jeffords*, Attorney General, *H. Russell Morss, Jr.*, Assistant Attorney General, and *Edwin H. Amidon, Jr.*, Special Counsel, for the State.

**Keyser, J.** This appeal raises the single question of the validity of taxes assessed against the plaintiffs under the authority of 32 V.S.A. § 3610 relating to the taxation of perpetual leased lands by local municipalities. The case was submitted to the trial court on an agreed statement of facts. On the facts presented, the chancellor denied the injunctive relief sought by the plaintiffs' petition for a declaratory judgment, sustained the validity of the tax assessments and dismissed the petition. The case is here on appeal by the plaintiffs.

The plaintiffs are the successor lessees under perpetual leases of two parcels of land, one in the town of Calais and one in the town of Worcester.

The Calais lot is a portion of the "one right for use of a seminary or college" reserved for such use in the charter granted to the town of Calais by Thomas Chittenden, Governor of Vermont, on August 15, 1781. The original lease under which the plaintiffs hold their leasehold interests was given by the corporation of the University of Vermont, as lessor, to Alpheus Bliss and Watson Wheeler, as lessees, on March 2, 1819.

The Worcester lot is a portion of "One share for the Benefit of a School in said town" as reserved in the charter granted by Benning Wentworth, Governor of the Province of New Hampshire, on June 8, 1763, then being a royal prerogative. The plaintiffs' leasehold rights of this lot are derived from a perpetual lease between the selectmen of Worcester, as lessors, and Oliver Watson, as lessee, dated May 16, 1821.

Since each original lease is a durable lease being for a term "as long as wood grows and water runs," they are within the purview of 32 V.S.A. § 3610. Subsection (b) of the statute requires the listers of each town to appraise such leased lands at their fair market value. If the lease is not exempt under

subsection (d) of the statute, the appraised value of each perpetual lease is the fair market value of the land as shown by the appraisal. This value is set in the grand list of the lessee as real estate and local taxes are levied thereon with credit being given for the annual rental payable under the lease.

Subsection (d) of the statute provides:

"A perpetual lease is exempt from taxation against the lessee if so provided by an express term of the original grant of the subject land by the state of Vermont, or by a statute in effect at the time of the grant providing for exemption in perpetuity of the leases, or if the subject land would be exempt under chapter 125 of this title if the lessee were the owner of the land."

The defendant towns of Calais and Worcester by authority of the statute in question have respectively set the listed value of the leasehold interest in the grand list of the plaintiffs as real estate for the years 1969 and 1970 and have assessed taxes thereon.

The plaintiffs claim the tax levied is invalid. They contend that an 1814 statute in effect in 1819 and 1821 (the dates of the leases in question) had for its only purpose the exemption from taxation of lands held under durable leases. This is, as they claim, the crucial question before us.

For the tax to be invalid the exemption from taxation must come under the provision of subsection (d), *supra,* relating to a statutory exemption. The other exemptions given by the subsection are not applicable here, nor claimed to be by the plaintiffs. But it should be noted that neither original grants of the subject land have a provision for the exemption from taxation of the perpetual lease. Thus, there is no impairment of the lease contract or interference with the educational trusts created by the charters.

The statute relied upon by the plaintiffs is Chapter LXXVIII of the Acts of 1814, enacted by the legislature on November 8, 1814. This statute, in effect, provided that all lands granted to public, pious and charitable uses were declared to be exempt from all taxes, so long as they remain to such uses.

The plaintiffs say that since the foregoing "statute was in full force at the time of the lease contracts here in question",

the leases impliedly, by operation of law, contain the tax exemptions of the act of 1814 and that they are forever exempt from taxation against the tenants. They cite *Herrick* v. *Randolph*, 13 Vt. 525 (1841), in support of their position. In that case the plaintiff owned perpetual leaseland on which buildings had been erected. The legislature, by statute passed in 1825, required buildings on public lands to be appraised and set in the grand list of the occupiers for taxation purposes. The principal question for decision there was whether the land, at the time of passing the act, made it perpetually exempt from taxation. The court said at page 530:

> "Such an exemption from taxation as would deprive the legislature of the power to tax these lands, could only be claimed on the ground that it did, at the time of the grant, form a condition or else a consideration of such grant. For it is only to that extent that legislative grants have been considered contracts within the meaning of the United States constitution, prohibiting the states from passing any law 'impairing the obligation of contracts'."

In the case at bar, there was not, in the terms of the charters, any express exemption of this right of land from taxation. Neither was there any declaration or act of legislature or any general provision of the law then in force connected with the granting of the charters which contained a declaration to that effect. A tax exemption was not a consideration of the grant. If there had been a law exempting leased lands from taxation at the time of granting the charter, its provisions would have formed conditions of the grant, and the state could not have repealed such conditions, or been allowed to violate them. *Herrick* v. *Town of Randolph, supra,* 13 Vt. at 531. But this is not the situation here.

Clearly, the *Herrick* case does not support the contention of the plaintiffs. In that case, respecting the effect of the act of 1814, Redfield, J. speaking for this Court, said at page 532:

> "It is at once obvious that lands granted by the state for these uses, while that statute was in effect, would take that exemption, as one of the conditions of the grant, as was held in the Connecticut cases. But that statute could have no effect upon former grants, except while it

continued in force. After land of the state is once granted, and its uses declared, the legislature (unless some reservation is made,) have no more control over it than they have over any other property in the state. . . . The legislature of 1814 could no more bind any future legislature, in regard to exempting public land from taxation, than they could upon any other subject."

The original lessees were charged with knowledge of the legislative power to remove such exemption granted by the act of 1814. They, and their successors, took their respective leases subject to this possibility. The case of *West Wisconsin Rwy. Co.* v. *Board of Supervisors,* 93 U.S. 595, 598, 23 L.Ed. 814, 815 (1876), deals with this subject of legislative action withdrawing a prior exemption. The court stated at 23 L.Ed. at 815:

"We hold here, as we held there, (22 Wall., 575) that the exemptions in question were gratuities offered by the State, without any element of a contract. There was no assurance or intimation that they were intended to be irrevocable, or that the laws in question should not be at all times subject to modification or repeal in like manner as other legislation. If a different intent had existed, it would doubtless have been clearly manifested by the language employed."

The plaintiffs, as subsequent assignees of the original leases, could not receive any tax benefits by the assignments to them and are attempting to incorporate the provisions of the act of 1814 into the leases which may not be done. The state was not a party to the instruments in question and the terms of the act of 1814 exempting such leased lands from taxation could not be incorporated as a provision of the lease under any consideration.

"It was a simple act of ordinary legislation, so far as this land was concerned, which had been granted and leased many years before." *Herrick* v. *Town of Randolph, supra,* 13 Vt. at 532.

The ruling of the court below is without error.

*Judgment affirmed.*